S. WATSON, Trustee, v. P. M. RYAN and others.

April Term, 1875.

DEED — DELIVERY — REGISTRATION. — Delivery of a deed is essential to its validity, though it need not be formal or manual, if the intention to deliver and accept be made to appear; but registration alone is not sufficient.

TAX TITLE ACQUIRED BY MORTGAGEE. — A mortgagee of realty, even if the conveyance contain provisions which render it void as to other creditors of the grantor, cannot, by purchasing the property at a tax sale, acquire any title inconsistent with that held under his deed.

S. Watson, Jr., for complainant.

A. F. Whitman, D. F. Wilkin, and M. M. Brien, for defendants.

THE CHANCELLOR: — On September 24, 1862, P. M. Ryan, reciting a consideration of natural love and affection, executed a deed purporting to convey to one W. H. Dobson certain realty described, in trust for his wife and children, which deed was duly registered on the 26th of the same month. On the same day, Ryan executed another conveyance of personalty to Dobson, in trust for creditors therein named, which deed was also duly registered. Nothing, so far as appears, seems ever to have been done under these conveyances, or ostensible conveyances. On January 25, 1867,

Ryan conveyed to one Chamberlin the principal piece of realty mentioned in the previous deed, in trust to secure M. Kean and others as his sureties on an injunction bond executed by him to procure an injunction from this court against the collection of certain debts. This deed was also registered. On May 14, 1868, Ryan conveyed the same land, and certain personal property thereon, to M. M. Brien, to secure him against liability on a replevin bond executed by Ryan as principal and Brien as surety, in order to replevy the property from an attachment sued out in this court. This deed was also registered.

On February 13, 1872, S. Watson recovered a judgment in the Circuit Court of Davidson County against P. M. Ryan for $1,520.07, on a note made by Ryan in 1861, on which execution issued and was returned *nulla bona.* Thereupon, on August 2, 1872, Watson filed his bill in this court against Ryan, Ryan's wife and children, Dobson, Brien, and others, and attached the land and personalty on the 2d and 21st of the same month, charging that the conveyance to Dobson was voluntary, fraudulent in law as to complainant, by reason of the debt being then in existence, and fraudulent in fact; and charging, also, that the conveyance to Brien is void and fraudulent. Ryan answers this bill, but says not a word about the conveyance to Dobson; nor is his answer excepted to, nor is it marked as filed. I am not certain, therefore, whether the complainants have recognized the paper as an answer or taken the bill for confessed. Brien answers, denying that the conveyance to him is fraudulent, and adds that, having ascertained the existence of the conveyance to Dobson, in trust for Ryan's wife and children, he bought the property at tax sale, and has a deed for it. No proof has been taken or evidence filed, except a transcript of the complainant's judgment.

In the year 1873 Ryan died intestate, and A. F. Whitman qualified as administrator of his estate. On March 31, 1874, M. Kean filed his bill against Whitman as administra-

tor, and the widow and children of Ryan, and Chamberlin, stating that, as surety of Ryan on the replevin bond as aforesaid, he had been recently compelled to pay $555.31, and seeking a foreclosure of the mortgage made for his indemnity. Process seems to have been executed on the defendants, and a guardian *ad litem* appointed for the infants, and nothing further done.

On September 15, 1874, A. F. Whitman, as administrator of P. M. Ryan, filed his bill against all the parties to the foregoing suits hereinbefore mentioned, recognizing the debts of Watson and Kean, and alleging that the personal assets of the estate, all of which are subject to the attachment in the Watson suit, are wholly insufficient to pay the debts, and he has suggested its insolvency accordingly, and asking that the administration of the estate be transferred to this court. The bill sets out the various conveyances of Ryan, and the suits brought as above detailed, and attacks the deed to Dobson in 1862 as fraudulent and void, and the subsequent conveyances made to secure Kean and Brien as equally void as to him. He asks that these conveyances be set aside, the property sold for the payment of debts, the liens of the creditors declared, and for general relief.

To this bill Watson, Kean, and Brien have filed answers, setting up their respective claims. The infants have answered by guardian *ad litem*, and the bill has been taken for confessed against the other parties. Brien has filed the deed from the tax-collector, under which he claims to hold the land in suit by virtue of his purchase at tax sale. Watson has filed a complete transcript of the proceedings in the Circuit Court in the suit in which he recovered his judgment against Ryan, showing that the debt on which the judgment is based was created in the year 1861. Certified copies of the deeds to Dobson, in 1862, are also filed. And Dobson's deposition has been taken, but only to prove that no consideration was paid by him, or by any one for him, to Ryan for said conveyances.

The parties seem to have taken it for granted that all the matters of litigation between them may be disposed of under the bill of Whitman, administrator, to which they are all made defendants. The bill is filed upon suggestion of the insolvency of Ryan's estate, for the administration of that estate in this court, for the sale of realty to pay debts, and, to this end, to set aside the several conveyances alleged to be fraudulent under the Code, sec. 2395. Previous to the passage of the statute upon which that section is based, the personal representative of a decedent, like the decedent himself in his lifetime, could not dispute the validity of such conveyance. That section provides thus: "The executor or administrator may, as the representative of the creditors of an insolvent estate, file a bill to set aside a fraudulent conveyance of property; and when such conveyance is set aside, the assets recovered shall be distributed *pro rata* among the creditors." Under this section the personal representative acts for the creditors, not for the estate, and must show that the estate is insolvent, that there are debts, and that the proceeding is on behalf of the creditors. *Boxy* v. *McKay*, 4 Sneed, 286.

The bill could not be maintained at all except by showing debts, but it does concede the validity of the debts of Watson and Kean, and is, therefore, within the statute. It also makes out a state of facts giving the court jurisdiction under the insolvent laws. I agree with the parties in thinking that, under these circumstances, the whole litigation is before the court under Whitman's bill, and may be disposed of, giving the litigants the benefits of any priorities acquired by virtue of the separate suits.

The first question which naturally presents itself is in relation to the conveyance of September 24, 1862, to W. K. Dobson, in trust for Ryan's wife and children. The charge of Whitman's bill, in this regard, is that Ryan died seized and possessed in fee of the realty in controversy. This would not have been the fact if the deed to Dob-

son had been · executed and delivered to the trustee or beneficiaries, even if it had been fraudulent and void ; for,· so far as Ryan was concerned, the title would have passed, even if the deed was void as to creditors. The allegation could only be true upon the supposition that the instrument in controversy was not executed with the necessary formalities to make it operate as a deed. In other words, the deed was simply made and registered as a fraudulent device by Ryan, but never actually delivered, or acted under. Dobson, the trustee, and Ryan's widow, the only adult beneficiary, concede such to have been the fact by allowing the bill to be taken for confessed against them. The infants put in a formal answer, and the question, so far as they are concerned, is whether it was necessary for the complainant to go a step further, and prove a negative, — that the deed was never delivered ; or upon the infants to prove the affirmative, — that it was delivered. Delivery of a deed is essential to its execution, though it need not be formal or manual, if the intention to deliver and accept manifestly appear. Registration alone is insufficient, without evidence showing that it was done with intent that it should operate as a delivery ; but the intent might be implied from subsequent admissions or circumstances. *McEwen* v. *Troost*, 1 Sneed, 186, 191. Declarations of the grantor, or recognition of the rights of the beneficiaries, would suffice.

The bill charges that the instrument of September 24, 1862, was not a deed, but a mere fraudulent device, never having passed the title. The trustee admits it. The adult beneficiary admits it. The only evidence in the record tends. to show that the instrument never was delivered as a deed. There is no proof that either the trustee named or the beneficiaries ever knew of its existence, or accepted its benefits. The grantor continued to act in regard to the property afterwards precisely as he did before. The retention of the deed by the grantor, and want of knowledge by the trustee and beneficiaries, are not, it is true, conclusive of the rights of

the parties. *Way's Trust*, 2 De G. J. & S. 365; *Souverbye* v. *Arden*, 1 Johns. Ch. 240; *Saunders* v. *Harris*, 1 Head, 206; Perry on Tr., sec. 103; *McBee, ex parte*, 63 N. C. 334. But there is enough apparent to throw the burden upon the supposed beneficiaries to show a delivery, or what would be equivalent. *Haughton* v. *Barney*, 2 Ired. Eq. 393. In the absence of other testimony, the instrument cannot be held ever to have had any efficacy. Perry on Tr., sec. 103, and cases cited.

In this view, the conveyance of January 25, 1867, to Chamberlin, in trust to secure Kean, was clearly good, and the beneficiary is entitled to the indemnity thereby secured. The filing of his bill on March 31, 1874, was an acceptance of the benefits of the deed, so far as Whitman and all persons claiming under his subsequent bill are concerned. Kean is no party to Watson's bill, and of course there is no issue between these parties upon the question as to when Kean actually accepted the benefits of the conveyance. It is probable the deed was made with his knowledge, and the acceptance was contemporaneous. But Watson is at liberty to make an issue with Kean on this point, if he chooses to do so. All I undertake to decide now is that, as between Whitman, administrator, — and of course all persons coming in for a benefit under his bill, — on the one side, and Kean on the other, Kean has the prior right, by reason of the previous filing of his bill. I do not understand that there is any equity in Whitman's bill upon its averments of fact against Kean; but if there is, that equity has been fully met by Kean's answer, and there is no proof to sustain it.

The conveyance to Brien would also have been good as a mortgage indemnity, but for the clauses in the instrument giving the grantor the right to make and sell the personal property as he might see fit, until demanded by the grantee, and giving him the right to keep the property upon paying the debt against which the indemnity was given, no matter what it might be. These provisions are inconsistent with

the character of the instrument as a mere security, and make it void in law as against other creditors. But, as between Ryan and Brien, the deed was good as a security for the liability incurred by Brien. Under these circumstances, the relations between the parties were such that Brien could not, by purchasing the property at a tax sale, acquire any title inconsistent with that held under the conveyance from Ryan, as I held at a previous term of this court, in the case of *Brien* v. *Jordan, Marsh & Co.*, 1 Tenn. Ch. 625. See also *Harrison* v. *Winston*, 2 Tenn. Ch. 548. Brien is entitled to be reimbursed in his expenditures in acquiring the tax title, and to a lien on the property until he is reimbursed. But the tax deed, whether valid or void, will be set aside as a cloud upon the title to the property.

Watson, by his bill filed in the lifetime of Ryan, acquired a lien on the real property superior to that of all other creditors except Kean, and superior to that of Kean on the personalty attached.

A decree may be drawn up settling the rights of the parties in accordance with these rulings. But no sale of the realty can be made until an account has been taken with the administrator, to ascertain whether there are any personal assets with which to pay the admitted debts, and others which may be filed, against the estate. Such a reference, and the usual decree in insolvent cases, will be made. *Green* v. *Shaver*, 3 Humph. 139; *Perkins* v. *Norvell*, 6 Humph. 151.

In the view I have taken of the case, the conveyance of September 24, 1862, being inoperative for want of delivery, or its equivalent, and the conveyances to Kean and Brien being only in mortgage, the widow of Ryan is entitled to dower in the land. But she is not entitled to a homestead as against either Watson or Kean, whose debts accrued before the Constitution of 1870. The costs will be paid out of the assets of the estate.